Mr. Flaxman. Thank you, Your Honor. May it please the Court. A common theme in the Supreme Court strip-search jurisprudence is wide-ranging deference to the expert penological judgment of jail and prison officials. It's the plaintiff's burden to show that the judgment of jail or prison officials is irrational or unreasonable. In Bell, there was a written rule that every prisoner had to be strip-searched after a contact visit. In Florence, the Supreme Court's most recent pronouncement on strip-search practices, the rule required that every detainee or In this case, the threshold question is, what is the policy of the Jerome Combs Detention Center for strip-searching arrestees? We know that there's a written policy, there's section 901, which says everyone going to the general population must be strip-searched. And we know that there's another written policy, section 315, that requires, that sets out or describes the type of very complete strip-search that's performed. When the plaintiff moved for class certification in this case, the defendant said, well, we don't really follow the written policy. Based on affidavits from the jail administrator and supervisors and officers, the defendant said, what our real policy is, is to conduct strip-searches when contraband in drug or drug-related charges is found during a pat-down search. We also conduct strip-searches whenever the arresting officer requests a strip-search in writing. The defendants also said in their affidavits that everybody who's arrested and comes to the detention center does not go into the general population. That depends on a number of factors and it's a case-by-case decision. There isn't any intermediate form of custody, as I know, for the general population and then people who are booked and bond out immediately. Anybody who's going to be held in the jail is, by definition, in the general population. There isn't any separate place for pre-arraignment people. There's no evidence of that, Your Honor. There's evidence that there are eight detention cells. We don't know whether they're one-person, two-person, or ten-person cells. There's evidence, there's no evidence from any jail administrator saying what Your Honor just said. The evidence is exactly the opposite, that everybody who's arrested does not go into the general population. We have affidavits and deposition testimony from arrestees who said, I was held. I thought that those eight individual detention cells are used to house people who have been arrested and are undergoing the booking process, but they're not holding cells for any duration of time. There's absolutely nothing in the record to support that. I think that's asserted in the brief, but there's no evidence of that. And we don't know whether they're four-person cells or one-person cells. In other jails, they have multi-person cells that they hold people in while they're waiting to get bond set. I think there's another jail in Rock Island where there's like a 12-person cell and everybody just goes in there waiting to I know what the, I do not know what the inside looks like, that's correct. I was relying on the defendants proving their, proving what their policy was and they came forward at class certification with affidavits stating everybody does not go into the general population. That depends on a variety of factors. It's a case-by-case decision. We do not have a policy like there was in Florence that everybody goes into the general population. What does the summary judgment record show? It doesn't show anything different. The defendants did not come forward with any evidence from anyone, any affidavit saying everybody has to go to the general population. The defendants relied on the statement that there are eight detention cells, period, and then argued and then argued I think the language that's used in the... But it's your obligation in response to summary judgment to demonstrate that there are people who are not going into the general population who are subjected to a strip search because Florence says that if you're going into the general population a strip search is constitutional. I think you're over-reading Florence. Florence actually said if there's a policy that requires it, it's clear from Florence that they were not reaching any other situation other than where there was a... Rather than debating the court about what the record shows, why not focus on what the record shows? Your brief says that at least two of the plaintiffs, Petrovich and James, contend that they were strip searched and then immediately released. Am I reading you correctly? That's exactly correct. Ms. Petrovich was waiting for her husband to show up with bond and she was strip searched. Mr. James was strip searched. I can't remember. Does your brief cite the exact places in the record where they say this? Yes, Judge. I think we cite to the page of the deposition and the line of the deposition. Because one would think that that's your critical distinction from Florence. Rather than debating with the court about what Florence means, we need to decide whether the facts of this case are within Florence. Well, the other reason why this is not in Florence is that all of these strip searches took place before a judicial determination of probable... Yes, it's awfully hard to see why that would matter. The rationale of Florence has to do with keeping drugs and gang signs out of the general population. So if you go in the general population before, after a probable cause hearing, that seems irrelevant. But whether somebody went into the general population might well be relevant. Your Honor asks if there's a record cite for where Petrovich and James said that. Those facts were asserted by the defendants in their summary judgment motion. That Petrovich was strip searched while waiting for her husband without going to general population and that James was strip searches were done on the request of the arresting officer. That suggests that those two people might have individual claims for an absence of reasonable suspicion that they were carrying contraband to support the officer's request for a strip search. But I'm not sure that that supports a class claim. Well, for Mr. James was strip searched we believe because he was had drug-related charges that the small quantity of misdemeanor amount of marijuana was found in him. That's not the on request of officer policy, that's the drug paraphernalia policy. Ms. Petrovich, we never saw any written request for a strip search. We had an oral request that Ms. Petrovich testified about. The problem with the argument your honor just articulated which is relied on heavily by the defendants is that Ms. Petrovich is in the class. The judge by ruling by granting summary judgments of defendants ruled against Ms. Petrovich and Mr. James on their individual classes. We had asked the judge. Well, I thought the class definition was anybody who was actually held in the jail and strip-searched without a probable cause. No, it's not held. It's anybody who's strip-searched following a warrantless arrest. All persons held in custody in the custody of the sheriff at the jail from this date to the date of judgment who following a warrantless arrest were strip-searched in advance of a judicial determination of probable cause. If she was booked and released, then she's not in the class. You're talking about someone who has a different status. She was in the custody of the sheriff while she was waiting for her husband to show up with bail money. She was not free to leave. She wasn't somebody off the street who they looked at and said we have to strip search you. She was there, she was locked up, she was awaiting her husband to show up. If her husband never showed up, she would have been held at the jail until she saw a judge. So she was bound for the, excuse me, so she was slated for admission to the, if her husband, she said my husband's coming with bail. Many times in jails people say my mother's coming with bond money and then mom doesn't show up and then they say your mom isn't coming we're going to put you in the jail. When she does show up then you could bond out but we can't let you stay here. She was waiting, she was sitting in the intake area in the cell I think waiting for her husband to show up. And she was not free to leave, she was not in the custody of the arresting officer, she was in the custody of the sheriff and she was strip-searched. Well again that suggests that she might have an individual claim but there isn't a class claim attacking the policy of strip-searching everybody who's admitted to the general population. We didn't challenge that, that was the class doesn't say admitted to general population. We were not trying to replay Florence. We were well aware of Florence when we filed a complaint. This was about people who were strip-searched before the judicial determination of probable cause. Well again probable cause has nothing to do with it. It's just irrelevant from the standpoint of the rationale that the Supreme Court gave in Florence for validating strip searches of anybody who so the probable cause aspect of the class definition just doesn't have anything to do with the claim. If you're trying to distinguish your case from Florence you've got to focus on people who are strip-searched when they weren't going into the general population. What distinguishes our case from Florence is that there is no clear policy about who is strip-searched, when they're strip- searched. The policy is not an injury. If you're making a Fourth Amendment claim you have to identify what the injury is and if the injury is a strip-search without individualized suspicion that claim might be cognizable if the person arrested is not going into the general population, but Florence said if the person is going into the general population you don't need individualized suspicion. I'm not going to re-argue Florence but when you're concerned about a policy and you're thinking about deferring to the rationality of that policy you have to know what the policy is. Every time the defendants have had an opportunity to articulate their policy they've changed what their policy was. First it was the I agree that it was a moving target but your main argument is that the judge should have created these subclasses, no? Isn't that what you're saying? Yes. But you didn't bring that up until actually the day of summary judgment. That's correct, that was a month after we finished doing the deposition. You basically said it was too late at that point. Couldn't you have brought that up six months earlier? I didn't, we had not completed the depositions until about a month before we filed the summary judgment. The summary judgment was due and I waited for the depositions to be transcribed and then I filed the papers. The district judge applied the standard for amending the complaint rather than, we weren't really changing our legal theories, we were trying to conform the pleadings to the proof about what the practice actually was and we were trying to create a basis for people like Ms. Petrovich to have her claim adjudicated on the merits rather than swept aside because she just could have been a capacity claim, couldn't she bring an individual capacity claim against it, whoever the guy was? It would now be time barred and there'd be a strong qualified immunity argument about doing that but she has, but the policy authorizes strip searches of people like Ms. Petrovich who are not going at the general population and that we should, summary judgment should not have been granted against this. I'm running out of time but I would, don't want to leave if there are more questions. All right, thank you. Thank you, Mr. Flaxman. May it please the court, my name is Michael Condon and I represent the district court. It is generally held that the Jerome Combs Detention Center's policy and practice of strip searching all arrestees... Mr. Condon, you've already said something that triggers my concern. How can a district judge hold that a particular policy is constitutional before first deciding what that policy is? Well, I think that the district court did determine what the policy and practice is. No, the district court said it would be constitutional to strip search everyone going into the general population and therefore it must be constitutional even if that's not the policy and the defendants themselves have said that's not the policy. Well, the first thing that does is scream advisory opinion. Judges are supposed to determine the validity or not of actual policies rather than hypothetical ones and second what bugs me is that the rationale of Florence is that you need to search everybody to keep weapons out of the general population. If Kankakee doesn't search everyone, how has it satisfied the rationale of Florence? Your Honor, in Florence the court said that the term strip search is an imprecise term. I'm not asking about the meaning of the phrase strip search. I wish you'd address my question. Okay, in response to your question, Your Honor, the evidence in the case from Chief Downey and from the correctional officers is that the practice in the Jerome Combs Detention Center is to have each inmate who's going into the general population go through a shower procedure. All the inmates clothes are taken off under section 901 of the intake policy. Clothes are removed. The inmate is essentially nude in front of a correctional officer which technically is a strip search. That's not what section 315 of the policy says which is a more invasive strip search procedure and the evidence from our purposes of summary judgment because the plaintiffs testified to this. I wish you would address my question. My question is, beside the worry about advisory opinions which you've certainly not assuaged, my question is doesn't Florence, doesn't the rationale of Florence critically depend on everybody being strip searched who goes into the population and if we have evidence that that's not what happens in Kankakee, how does Florence apply? I am inviting you to discuss the rationale of Florence, not to discuss something else of your own choosing. And I believe that the Florence decision does require that inmates who go into the general population that they be strip searched and the testimony in our case is that's what's happened. It's not a invasive strip search under 315, but it is technically a strip search. In testimony is that every arrestee that goes in who can't postpone, who goes into the general population in Kankakee goes through this procedure which requires them to disrobe, the officer sees them in that state, they're given a jail uniform, the whole purpose is so they don't bring contraband into the facility. And that's what Florence was concerned about was that when inmates are going into the general population that for security reasons correctional officials have to be able to conduct a procedure which allows them to prevent contraband, etc., for coming into the facility. In Jerome Combs under 901 the procedure is less invasive than what was done in Florence or under section 315. Okay, all right. Let me see if I understand your position correctly. You seem to be saying there is nothing to distinguish about Florence because the record unambiguously establishes that everyone who goes into the general population is first observed nude in the shower. You're saying that the record unambiguously establishes that? I say that the record establishes that every inmate is disrobed whether an officer decides to Each officer does that. I can't say that that's in the record, but what the officers do... Whoa, whoa, whoa, whoa. We are limited to what's in the record. I'm asking questions about the record. I'm not asking questions about your personal knowledge. Does the record unambiguously establish that everyone who goes into the general population is observed nude in the shower? Yes. Okay, we will have to policy 901? Yes. Look, counsel, if I'm not being clear, the question is not what's written in the policy, but what happens in fact. Yes. And you say it's unambiguously established in the record that that happens in fact. Yes. Okay. In Florence, Your Honors, the Supreme Court held that a blanket policy which requires all individuals arrested without a warrant or arrested on a warrant be strip-searched before entering into the general population. In our situation, the arrestees were not arrested on warrants. I don't believe that the Florence decision that there's any distinction to be made with respect to that scenario. I think that if an inmate under Florence, if an inmate is going to be housed in the general population, that they can be strip- searched. With respect to the questions regarding inmates James and Petrovich, James and Petrovich testified in their depositions, and we assumed it true for purposes of summary judgment that they so testified, that they were not put into the general population. We believe that these are isolated incidents and that that's not what this class action case is about. Those two individuals were not strip-searched pursuant to the policy or practice at the Jerome Combs Detention Center. As Your Honor noted previously... Do you think that they're in the defined class? I do not believe that they're in the general population. Plaintiffs in their complaint, when this case was filed, the plaintiffs in their complaint alleged, one, that the sheriff's policies required that any new arrestee arriving at JCDC, who like plaintiffs, would not be posting bond and would be held in a housing unit, and two, that the sheriff's policies required a strip search of all arrestees who would be unable to enter the general population. So no, I do not believe that these two individuals, these two inmates, are part of the class. So people going through, arrested, people who are arrested whether on a warrant or without a warrant, who are posting bond immediately are not put through the showering and visual strip search procedure? That's correct, Your Honor. That's correct. According to the written policies and the actual practice at the jail, they're allowed to wait in a waiting area until... That's correct. Bail shows up? Yes, until the bond is paid. And there are eight booking cells in the booking area and then there is a general seating area. And those individuals who are arrested on minor offenses, who can post bond within a reasonable time, they're not placed in the general population. They're held in one of these eight booking cells or in the waiting area and put through the paperwork of booking but not the physical process of admission to the jail. That's correct. Isn't that, I'm sorry, maybe I'm confused, isn't that inconsistent with this facility's defense? I mean, aren't you saying that you can't put people in these waiting rooms or these cells and therefore they have to go to the general population? Well, what we're saying, Your Honor, is that depending upon the number of inmates each day that are brought into the facility, and we brought forth evidence in the affidavits of the Chief of Corrections and the Assistant Chief of Corrections, that based on the number of inmates that come in on an average at the Jerome Combs Detention Center each day, that it is not practical. In fact, can't do it to put them in these eight booking cells because there's more people that come in. Is that just the opposite of what you said to Judge Sykes? No, Your Honor, what I'm saying is that when a person comes in, if they can't immediately post bond, they're going to be put into the general population because we don't have enough cells in booking to hold them. As I understand it, this goes to the probable cause determination aspect of the argument, that there isn't any intermediate holding area if an arrested person can't immediately post bond and get released, but has to wait for arraignment, which could be as long as two days. 48 hours, that's correct. So there isn't that intermediate status. There is not. You're in the jail population until you get your probable cause hearing or you're bonding out immediately. That's correct. And the eight holding cells are just for people who are bonding out immediately. Yes. And that's clear in the record. Yes, and the holdings, yes, that's what the purpose of the... That's not clear in the record, is it? I mean, there's a lot of factual unclearness in the record about these cells. I mean, how many people can you put into these cells? Well, yes, Your Honor, these cells are single cells in booking. There's eight of them right in a row. Could you put two people in there? Yeah, you could. They could stand next to each other, but these are individual cells in booking, just like in the Moore case where the court, a post-Florence case, was a very situation where there was eight cells in booking. There's just, there's not enough room there to house all the inmates who can't postpone. It's not meant for overnight stays? No, it's not. There's no bunk or toilet, etc.? Well, there's a toilet in the individual cell, but yeah, it's not meant for overnight stays. But the record's kind of fuzzy on that, isn't it, on the nature of these cells in the waiting room and what they could be used for? Well, I mean, Chief Downey testified as to the eight individual booking cells in the booking area. A plaintiff, in the deposition of Chief Downey or the other officers, could have asked more detailed questions about, you know, what's the size of it, what's the... He didn't ask those questions. Unless there's further questions, the defendants would ask that this honorable court affirm the lower court's decision. Thank you. Thank you, Mr. Condon. Anything further, Mr. Flaxman? In response to the question of does the record unambiguously establish that everyone is viewed nude in the shower room, I would ask the court to review pages 16 through 18 of the reply brief, where we have the record sites with page and line numbers of the depositions in which the officers testified that people don't get strip searched in the shower room. People were allowed to stand behind the shower curtain when they shower. I don't look at people's private parts when they take a shower. Lieutenant Tafari, who'd been at the jail for 20 years, was asked, do you know if strip searchers ever have been conducted in the shower room? And his answer was, not that I've done or seen. I suspect that the court will agree after reviewing the record that the record does not unambiguously establish that everyone is viewed nude in the shower room. I would challenge the court to find in the record anything saying that those cells in the booking area are single cells or are individual cells. All we have is that there are eight cells. And to say that it was plaintiff's burden to inquire into that when it's defendant's burden on summary judgment is fanciful and far-fetched. If there are further questions, I'll... Thank you. Thank you very much, counsel. The case is taken under advice...